UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS NICHOLLS, *et al.*,
                                    Plaintiffs,

                    -v-

MELISSA AVILES-RAMOS, *et al.*,
                                    Defendants.

25-CV-7569 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs are the parents of four students with disabilities who are enrolled at the International Academy for the Brain ("iBrain").  On September 11, 2025, they brought this action against the New York City Department of Education and its Chancellor Melissa Aviles-Ramos (together, the "Department") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*. ("IDEA").  Plaintiffs alleged that the Department failed to identify, implement, and fund the students' pendency placements for the 2025-2026 school year.  (*See generally* ECF No. 1 ("Compl.").)

Plaintiffs previously moved for emergency injunctive relief.  (ECF No. 7 ("Res. Per."); ECF No. 13 ("Pend.").)  The first motion (the "Resolution Period Motion") requested that this Court issue an order compelling the Department to comply with Plaintiffs' expedited requests for a due process hearing and finding that failure to implement the expedited timelines is a per se denial of free appropriate public education ("FAPE").  (*See generally* Res. Per.)  Plaintiffs' second motion (the "Pendency Motion") requested that this Court order the Department to fully fund tuition, transportation, and nursing services, as applicable, for Plaintiffs for the 2025-2026 school year, including any late fees associated with the untimely payment of funding.  (*See generally* Pend.)  On October 27, 2025, the Court denied the Resolution Period Motion and

1

granted in part and denied in part the Pendency Motion.  (ECF No. 25.)  The Court declared iBrain the students' pendency placement for the 2025-2026 school year but did not direct the Department to immediately fund those placements.  *Id.*

Pending before the Court are the Department's motion for reconsideration (ECF No. 29) and Plaintiffs' proposed order to show cause for emergency injunctive relief (ECF No. 44).  For the reasons that follow, the Court grants the Department's motion for reconsideration and denies Plaintiffs' request for the Court to issue emergency injunctive relief.

## I.      Background

The Court presumes familiarity with the facts underlying this action and summarizes only those facts relevant to the matters before it.

"The IDEA offers federal funds to states that demonstrate, *inter alia*, that they have developed plans to assure 'all children with disabilities residing in the state' a '[FAPE]'." *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 159-60 (2d Cir. 2004) (quoting 20 U.S.C. § 1412(a)(1)(A)).  School districts must create an individualized education program ("IEP") for qualifying children to ensure they receive a FAPE.  20 U.S.C. § 1414(d).  "The IDEA requires that an IEP be 'reasonably calculated to enable the child to receive educational benefits.'"  *R.E. v. New York City Dept. of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)).

If a parent believes that the IEP is inadequate and that the Department thus failed to provide their child with a FAPE, "the parent may file a 'due process complaint' [('DPC')] (a type of administrative challenge unrelated to the concept of constitutional due process) with the appropriate state agency."  *Id.* (citing 20 U.S.C. § 1415(b)(6)).  The due process hearing is conducted by an Impartial Hearing Officer ("IHO").  *See id.* (citing 20 U.S.C. § 1415(f)(1)(A)).

After an IHO has issued a decision, either party may appeal that decision to the State Review Officer ("SRO").  N.Y. Educ. L. § 4404(2).  Either party may then seek review of the SRO's decision in state or federal court.  20 U.S.C. § 1415(i)(2)(A).  The IDEA contains a "stay-put" or "pendency" provision that entitles children to "remain in [their] then-current educational placement" at public expense "during the pendency of any proceedings."  *Id*. § 1415(j).

"Parents can also unilaterally change their child's placement during the pendency of review proceedings—for instance, by enrolling them in private school— but they do so at their own financial risk."  *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023) (cleaned up), *cert. denied*, 144 S. Ct. 559 (2024).  To determine a student's "then-current educational placement" for purposes of the stay-put provision, courts look to (1) "typically the placement described in the child's most recently implemented IEP"; (2) "the operative placement actually functioning at the time . . . when the stay put provision of the IDEA was invoked"; and (3) "the placement at the time of the previously implemented IEP."  *Mackey*, 386 F.3d at 163 (citations and brackets omitted).  The term "'operative placement' has its origin in cases where the school district attempts to move the child to a new school without the parents' consent, or where there is no previously implemented IEP so that the current placement provided by the school is considered to be pendency placement for the purposes of the stay-put provision."  *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 536 (2d Cir. 2020).  It does not apply to circumstances where, for example, a parent "unilaterally transfer[s] his or her child and subsequently initiate[s] an IEP dispute to argue that the new school's services must be funded on a pendency basis."  *Id.*; *see also Mendez*, 65 F.4th at 59.

Here, Plaintiffs are parents and guardians of four students with disabilities: T.A-N., O.C., L.M., and C.P.  (*See generally* Compl.)  Plaintiffs filed due process complaints ("DPCs") for the

3

2025-2026 school year on July 2, 2025, alleging that the Department did not provide their children a FAPE for the 2025-2026 school year. (*Id*. at ¶¶ 117, 128, 139, 152.) During the pendency of the proceedings, Plaintiff children were attending iBrain. (*Id*. at ¶ 202.)

However, relevant to the Department's motion for reconsideration, two Plaintiff students have pendency determinations establishing placements at schools other than iBrain. For student T-A.N., an unappealed March 24, 2025 decision issued by the IHO establishes iHope as the student's last agreed-upon educational program. (ECF No. 31-1 at 21-22, 24.) With respect to student C.P., the most recent—and currently operative—interim pendency order issued by the IHO on August 25, 2025 provides that C.P.'s last agreed-upon educational program consists of a 12:1+(3:1) special class with related services that can be implemented by the New York City Department of Education at a District 75 school, together with transportation to be implemented by the Office of Pupil Transportation. (*See* ECF No. 15 at 8-9; ECF No. 16-4 at 9-12; ECF No. 30 at 9-10.) C.P.'s parent has filed an interlocutory appeal challenging the IHO's August 25, 2025 pendency order, which remains pending. (ECF No. 30 at 10-11.)

In the interim, Plaintiffs' motion for emergency relief alleges that the Department has failed to make required nursing payments to B&H Healthcare Services/Park Avenue Home Care ("B&H") for students C.P., T.A.N., and O.C. (*See* ECF No. 44-2; ECF No. 47 at 1.) B&H allegedly provides necessary nursing services for the students. (ECF No. 47 at 1.) Plaintiffs contend that, absent such payments, those students will be unable to attend school at iBrain, which Plaintiffs assert would conflict with this Court's prior order establishing pendency at that institution. (*Id.*)

## II.    Legal Standard

### A.    Motion for Reconsideration

It is "well settled" that litigants may not use a motion for reconsideration as a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up).  The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the Court overlooked." *Id.* (quotation marks omitted); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (explaining that reconsideration should be granted "only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice'" (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))).

Yet a district court also retains "the inherent authority to reconsider and modify its interlocutory orders." *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 177-78 (S.D.N.Y. 1995); *see United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("[T]he power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment and is not inconsistent with any of the Rules." (cleaned up)).

### B.    Motion for Temporary Restraining Order and Preliminary Injunction

To obtain a temporary restraining order or a preliminary injunction, "a party must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a [TRO or] preliminary injunction is in the public interest." *State Farm Mut. Auto. Ins. Co. v. Tri-*

*Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024) (quotation marks omitted). "A showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Ogunleye v. Banks*, No. 23-CV-9092, 2025 WL 1078301, at *1 (S.D.N.Y. Mar. 27, 2025) (alteration adopted) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (citation and quotation marks omitted).

## III.    Discussion

### A.    The Department's Motion for Reconsideration

The Court follows Judge Torres's guidance in her January 30, 2026 order. Like this Court, Judge Torres initially determined that pendency was at iBrain for the 2025-2026 school year for all students in that action because the Department had not disputed that all students were currently attending and receiving services at iBrain. *See Moonsammy v. Aviles-Ramos*, No. 25-CV-5923, 2025 WL 2452350, at *2 (S.D.N.Y. Aug. 26, 2025). Judge Torres later vacated that portion of her initial order, recognizing that it was based on the "misapprehension of fact" that defendants did not dispute pendency was at iBrain for all students, rather than an analysis of the facts surrounding each students' entitlement to pendency at iBrain. *See Moonsammy v. Aviles-Ramos*, No. 25-CV-5923, ECF No. 73, at 10 (S.D.N.Y. Jan. 30, 2026).

This Court likewise construed the Department's assertion that the students' placements at iBrain were not at risk during the 2025-2026 school year (ECF No. 19 at 14), together with the Department's failure to dispute that the students' pendency placement is at iBrain, as a concession that iBrain is the undisputed pendency placement for all students. Now, the

6

Department has clarified that the most recent administrative proceeding for T.A-N. and C.P. established different institutions as the proper pendency placements for those students. (ECF No. 30 at 5-6.)

Vacating the Court's declaration regarding pendency placements for T.A-N. and C.P. for the 2025-2026 school year is justified. An IHO analyzes each student's unique educational history to determine where, as a matter of law, pendency lies. *See Moonsammy*, No. 25-CV-5923, ECF No. 73, at 10. Here, the IHO conducted such an analysis and found that pendency is not at iBrain for either T.A-N or C.P. (ECF No. 31-1; ECF No. 16-4.) Thus, T.A-N. and C.P. may not be entitled to pendency at iBrain as a matter of law. Consequently, enforcement of the Court's initial order as to those students would be inequitable. *Moonsammy*, No. 25-CV-5923, ECF No. 73, at 10.

It bears noting, however, that the parties' initial briefings were less than forthcoming regarding T.A-N. and C.P.'s pendency placements. Plaintiffs represented that "[e]ach Student has a previous unappealed order establishing iBrain and each Student's related services . . . as their Pendency program/placement for the 2025-2026 [school year]," (Compl. ¶ 25), while the Department asserted that the students were not at risk of removal from iBrain because there was no evidence or allegation that their educational program or placement had been jeopardized (ECF No. 19 at 14). As Judge Torres concluded, if the parties had been clearer about the existing IHO decisions, "this order would not be necessary" now. *Moonsammy*, No. 25-CV-5923, ECF No. 73, at 11.

In light of that clarification—and given the substantial public expense associated with a single year at iBrain, which may reach hundreds of thousands of dollars per student—the Court concludes that vacatur of its prior pendency determination is warranted. Accordingly, the Court

vacates its October 27, 2025 Order to the extent it declared that T.A-N. and C.P. had pendency at iBrain. As a result, neither student shall be deemed to have obtained a judicial declaration of pendency at iBrain from this Court.

      **B.      Plaintiff's Request for Preliminary Injunction or Temporary Restraining Order**

Plaintiffs' counsel, Ray Bellatoni, and his colleagues at Liberty & Freedom Law Group have filed seventy-seven motions for preliminary injunction since June 2023, nearly all of which have been denied, withdrawn, or denied as moot. (ECF No. 48 at 6 n.1.) In fact, just this month, other courts in this District have been asked to adjudicate substantially similar requests by Plaintiffs' counsel for a preliminary injunction directing the Department to issue payment to B&H for students' bills, and those courts have denied those requests. *See Bruckauf v. Aviles-Ramos*, No. 25-CV-05679, ECF No. 52 (S.D.N.Y. Mar. 5, 2026); *Frias v. Aviles-Ramos*, 25-CV-05936 (S.D.N.Y. Mar. 4, 2026). The request presently before the Court meets the same fate.

Once again, Plaintiffs rely on the IDEA's stay-put provision, 20 U.S.C. § 1415(j), and once again, they overstate its impact. (*See, e.g.*, ECF No. 44-3 at 5-6.) The Second Circuit has made clear that the stay-put provision does not create an entitlement to immediate payment unless a child's parent establishes that nonpayment jeopardizes the child's educational placement. *Mendez*, 65 F.4th at 63; *see also Mendez v. Aviles-Ramos*, No. 25-CV-5746, 2025 WL 3033725, at *1 (S.D.N.Y. Oct. 30, 2025) ("Following the Circuit's ruling, this court has already made it abundantly clear that the stay-put provision operates as 'an automatic preliminary injunction' only insofar as it protects the child's right to remain in his or her then-current educational placement and ensures funding necessary to maintain that placement; it does not create an entitlement to immediate payment unless the parents establish that a delay or failure to pay jeopardizes their child's educational placement.").

Plaintiffs attempt to argue that the placements of T.A-N., O.C., and C.P. were in jeopardy due to the possible termination of nursing services. (ECF No. 44-3 at 15.) However, because the Court grants the Department's motion for reconsideration with respect to T.A-N. and C.P.'s pendency placements, the Department is not required to pay for nursing services for those students. Accordingly, the Court considers Plaintiffs' request for pendency funding only as to student O.C., which, according to Plaintiffs, includes a total of $323,330 for nursing services to be paid to B&H. (*Id.* at 7.)

Under the traditional preliminary injunction factors, Plaintiffs have failed to make the requisite showing. As to O.C., Plaintiffs have not demonstrated the imminent loss of services— or, in preliminary injunction terms, irreparable harm. With respect to O.C., the Department has already paid $186,686.22 in pendency tuition to iBrain. (ECF No. 48 at 9.) In addition, the Department authorized further pendency funding for O.C., including $161,665 to B&H for nursing services and $67,921 for transportation. (*Id.* at 9, 13.) This authorization covers 50% of the total amount owed to B&H for the entire school year. (*Id.* at 13.)

Further, Plaintiffs were able to negotiate with B&H to allow nursing services to continue through March 13, 2026. (ECF No. 50 at 3.) These developments undermine Plaintiffs' claim of imminent harm and confirm that the extraordinary relief of a TRO or preliminary injunction is neither necessary nor warranted.

Moreover, because the question of whether the Department must pay additional pendency funding—including nursing services related to O.C.—is currently on appeal (ECF No. 48 at 5, 10), the Court declines to order the Department to pay the full balance to B&H while those appeals remain pending. Ordering such relief would effectively result in the service providers being fully paid and would therefore risk undermining the purpose of the pending appeals.

9

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion for reconsideration is GRANTED.  The

Court vacates the portion of the Pendency Order declaring pendency at iBrain for T.A-N. and

C.P.

Plaintiffs' request for a preliminary injunction and temporary restraining order is

DENIED.

The Clerk of Court is directed to close the motion at Docket Number 29.

SO ORDERED.

Dated: March 12, 2026
       New York, New York

_____
            J. PAUL OETKEN
        United States District Judge

10