UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS NICHOLLS, *et al.*,
Plaintiffs,

-v-

MELISSA AVILES-RAMOS, *et al.*,
Defendants.

25-CV-7569 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs, the parents of four students with disabilities who are enrolled at the International Academy for the Brain ("iBrain"), bring this action against the New York Department of Education (the "DOE") and its Chancellor Melissa Aviles-Ramos (together, "Defendants") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* (the "IDEA"). (*See generally* ECF No. 1.) Principally, Plaintiffs contend that the DOE failed to fund the students' pendency placements for the 2025-2026 school year under the IDEA's stay-put provision. (*See id.*) Before the Court are Plaintiffs' motion for summary judgment and Defendants' cross-motion for summary judgment. (*See* ECF Nos. 57, 65.) For the reasons that follow, Plaintiffs' motion is denied, and Defendant's cross-motion is granted in full.

## I. Background

### A. Statutory Framework

"The IDEA offers federal funds to states that demonstrate, *inter alia*, that they have developed plans to assure 'all children with disabilities residing in the state' a 'free appropriate public education' ('FAPE')." *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 159-60 (2d Cir. 2004) (quoting 20 U.S.C. § 1412(a)(1)(A)). "The centerpiece of the IDEA's education delivery system is the individualized education program, or IEP." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002)

(Sotomayor, J.) (cleaned up). "The IDEA requires that an IEP be reasonably calculated to enable the child to receive educational benefits." *R.E. v. N.Y.C. Dep't. of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (quotation marks omitted). "The IDEA also requires states to provide an administrative procedure for parents to challenge the adequacy of their children's IEPs." *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024). New York has implemented a two-tiered administrative process, in which parents first file a complaint before an impartial hearing officer ("IHO"), and either side may appeal the IHO's order to a state review officer ("SRO"). *See id.* "Following the completion of the state administrative process, either party may seek review of the SRO's decision in federal or state court." *Id.*

"The IDEA contains a 'stay-put' or 'pendency' provision which provides that 'during the pendency of any proceedings,' the child is entitled to 'remain in [their] then-current educational placement' at public expense." *Id.* (quoting 20 U.S.C. § 1415(j)). To determine a student's "then-current educational placement," courts look to (1) "the placement described in the child's most recently implemented IEP"; (2) "the operative placement actually functioning at the time . . . when the stay put provision of the IDEA was invoked"; and (3) "the placement at the time of the previously implemented IEP." *Mackey*, 386 F.3d at 163 (cleaned up).

However, "the IDEA's stay-put provision does not create an entitlement to immediate payment or reimbursement" for that educational placement. *Mendez*, 65 F.4th at 63. Rather, parents may obtain monetary relief under the stay-put provision only "*if* they establish that a delay or failure to pay has jeopardized their child's *current educational placement*." *Juca v. Banks*, 188 F.4th 564, 570 (2d Cir. 2026) (cleaned up).

### B. Factual Background

Plaintiffs are the parents and guardians of four students with disabilities: T.A.N., O.C., L.M., and C.P. (*See generally* ECF No. 1 ("Compl.").) On July 2, 2025, each of the Plaintiffs

filed a due process complaint ("DPC") against the DOE, alleging, *inter alia*, that the DOE did not provide their student with a FAPE for the 2025-2026 school year. (*Id.* ¶¶ 20, 117, 128, 139, 152.) During the proceedings, the Plaintiff students were attending iBrain. (*See id.* ¶¶ 118, 129, 140, 153.) The Court details below the state pendency determinations (in which the IHO determined where the student would "stay put" throughout their administrative and judicial proceedings) and the administrative determinations on the merits (in which the IHO determined whether DOE failed to provide the student with a FAPE for the 2025-2026 school year) for each student.

**1. T.A.N.**

On January 12, 2026, the IHO issued a pendency order that determined that T.A.N.'s pendency arose from an unappealed March 24, 2025 Findings of Fact and Decision ("FOFD"), which provides for funding to iHope (another private school), not iBrain. (*See* ECF No. 58-1 at 4-5; *see also* ECF No. 66 ¶ 4.) On January 16, 2026, the IHO issued a FOFD concluding that the DOE's proposed IEP for T.A.N. for the 2025-2026 school year provided T.A.N. with a FAPE and denying T.A.N.'s parent's request for tuition funding and related services at iBrain. (*See* ECF No. 67-1 at 22.) T.A.N.'s parent appealed both the IHO's January 12, 2026 pendency order and the IHO's January 16, 2026 FOFD to the SRO, and those appeals remain pending. (*See* ECF No. 66 ¶ 4.)

**2. C.P.**

The IHO issued the operative interim pendency order on August 25, 2025, establishing that C.P.'s last agreed-upon educational program is a 12:1+(3:1) special class with related services that can be implemented by the DOE at a District 75 school, along with transportation to be implemented by the Office of Pupil Transportation. (*See* ECF No. 58-7 at 11-12.) C.P.'s

parent filed an interlocutory appeal challenging the IHO's interim pendency order, which remains pending. (*See* ECF No. 66 ¶ 5.)

**3. O.C.**

On October 22, 2025, the IHO issued a pendency order finding that pendency lies in the unappealed February 8, 2024 SRO decision, which provides for funding to iBrain and related transportation and nursing services. (*See* ECF No. 58-2 at 5.) Thus, DOE paid pendency services through December 31, 2025, to the tune of $416,272.22, consisting of $186,686.22 in iBrain tuition, $67,921 in iBrain-related transportation services, and $161,665 in iBrain-related nursing services. (ECF No. 66 ¶ 6.)

On December 13, 2025, the IHO issued a FOFD that denied funding to iBrain for the 2025-2026 school year in light of the IHO's concerns as to the dearth of evidence regarding the quality of iBrain's services, and more fundamentally, as to whether O.C. actually attended iBrain and received iBrain's nursing and transportation services. (ECF No. 67-2 at 24-26.) O.C.'s parent appealed the IHO's FOFD to the SRO, and the DOE cross-appealed the IHO's pendency decision on the basis that O.C. is no longer entitled to pendency at iBrain because iBrain's cost of attendance and related services increased by twenty percent from the 2023-2024 school year to the 2025-2026 school year. (ECF No. 66 ¶ 8.) Both issues remain pending on appeal before the SRO. (*Id.*)

**4. L.M.**

On August 11, 2025, the IHO issued an amended pendency order that determined that a final November 16, 2023 FOFD placed the student's pendency at iBrain and therefore ordered DOE to fund iBrain tuition and DOE transportation. (*See* ECF No. 58-4 at 2.) In light of that decision, DOE paid $189,832.74 in iBrain tuition through December 31, 2025. (ECF No. 66 ¶ 9.)

On October 31, 2025, the IHO issued a FOFD finding that the DOE's proposed IEP for the 2025-2026 school year provided L.M. with a FAPE and denying L.M.'s parent's request for iBrain funding for the 2025-2026 school year. (*See* ECF No. 67-4 at 11.) L.M.'s parent appealed the IHO's FOFD to the SRO. (ECF No. 66 ¶ 10.) DOE argues that the appeal was untimely filed. (*Id.*) In any event, the appeal remains pending before the SRO. (*Id.*)

**C. Procedural History**

Plaintiffs filed this action on September 11, 2025. (Compl.) On September 15, 2025, Plaintiffs filed two emergency motions for injunctive relief. (ECF Nos. 7, 13.) The first emergency motion requested an order compelling Defendants to comply with Plaintiffs' requests for expedited due process hearings. (ECF No. 7.) The second emergency motion requested that the Court order Defendants to fully fund Plaintiffs' iBrain tuition and related transportation and nursing services for the 2025-2026 school year during the pendency of their administrative and judicial proceedings. (ECF No. 13.)

On October 27, 2025, the Court denied Plaintiffs' motion for expedited due process hearings and granted in part and denied in part Plaintiffs' motion for pendency payments under the IDEA's stay-put provision. (ECF No. 25.) Specifically, with respect to Plaintiffs' motion for a preliminary injunction, the Court declared that iBrain was the students' pendency placement for the 2025-2026 school year but did not direct Defendants to immediately fund those placements. (*Id.*) However, after Defendants filed a motion for partial reconsideration on November 24, 2025 (ECF No. 29), the Court vacated the portion of its original order declaring pendency at iBrain as to T.A.N. and C.P. (ECF No. 52). Plaintiffs filed a notice of interlocutory

appeal as to the Court's order granting Defendants' motion for partial reconsideration, which remains pending before the Second Circuit.[1] (ECF No. 53.)

On April 29, 2026, Plaintiffs filed a motion for summary judgment (ECF No. 57), accompanied by a supporting declaration (ECF No. 58) and a memorandum of law (ECF No. 59 ("Mem.")). Plaintiffs also filed a letter motion apprising the Court of "the current outstanding pendency balances" and asking the Court to "schedule a prompt status conference to address DOE's implementation of the Students' pendency placements." (ECF No. 62 at 1, 4.) On June 29, 2026, Defendants filed a cross-motion for summary judgment (ECF No. 65), accompanied by two supporting declarations (ECF Nos. 66, 67) and a memorandum of law (ECF No. 68 ("Cross-Mem.")). On July 20, 2026, Plaintiffs filed their opposition to Defendants' cross-motion and reply in further support of their motion for summary judgment (ECF No. 69 ("Pls.' Reply")), accompanied by a supporting declaration (ECF No. 70). On August 10, 2026, Defendants filed a reply in further support of their cross-motion. (ECF No. 72 ("Defs.' Reply").)

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22

[1] Plaintiffs also moved for a stay and injunction pending appeal, which the Second Circuit denied. (ECF No. 71.)

F.3d 1219, 1224 (2d Cir. 1994). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where "there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *See Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of Am.*, 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012).

In the context of the IDEA, a motion for summary judgment requires the district court to "engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 837-38 (2d Cir. 2014) (quotation marks omitted). The Court's review of state administrative decisions in the IDEA context is "restrained by [courts'] lack of specialized knowledge and educational expertise; [courts] must defer to the administrative decision particularly where the state officer's review has been thorough and careful." *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 138-39 (2d Cir. 2013) (cleaned up).

## III. Discussion

Plaintiffs seek "an order compelling the DOE's full compliance with its outstanding pendency obligations" for the 2025-2026 school year under the IDEA's stay-put provision. (Mem. at 6; *see also id.* at 29-30.) Specifically, Plaintiffs ask that the Court direct DOE to "directly fund tuition [at iBrain] and all related services, including contractual late fees and interest" and "pay for the costs and expenses of maintaining this action, including reasonable attorneys' fees." (*Id.* at 6; *see also id.* at 29.) Defendants respond that the "DOE has complied with its funding obligations under pendency," and that Plaintiffs are not entitled to "*immediate* payment." (Cross-Mem. at 7.)

The parties' voluminous filings can be distilled into a two-step analysis. First, is there a sufficiently live controversy for which the Plaintiffs may seek additional pendency payments for the 2025-2026 school year? Second, are Plaintiffs entitled to ancillary awards, such as attorney's fees and late fees that have accrued under Plaintiffs' contracts with third-party vendors? For the reasons discussed below, the Court answers both questions in the negative.

**A. Mootness**

"Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). In light of that principle, federal courts are unable to entertain cases that have been rendered moot. *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) ("The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy."). "Because mootness deprives a federal court of subject matter jurisdiction, the Court must *sua sponte* determine whether this case is moot." *Wright v. U. PO*, No. 10-CV-5127, 2021 WL 2779451, at *9 (E.D.N.Y. July 2, 2021) (citing *Coll. Standard Mag. v. Student Ass'n of St. Univ. of N.Y. at Albany*, 610 F.3d 33, 35 (2d Cir. 2010) (per curiam)).

Under the Second Circuit's recent decision in *Juca*, students' claims for pendency payments owed for a particular school year usually "[become] moot once [that] school year end[s]" because the IDEA's stay-put provision offers relief to parents only "*if* they establish that a delay or failure to pay has jeopardized their child's *current educational placement*," and "the failure to pay for . . . a since-ended school year – without more – is insufficient to permit the inference that 'the then-*current* educational placement of the child' is in any way at risk." 188 F.4th at 570 (cleaned up); *see also Ramos v. Samuels*, No. 25-1321, 2026 WL 1346852, at *3 (2d Cir. May 14, 2026) (summary order) ("Because the 2024-2025 school year has ended, Plaintiffs-

Appellants cannot now claim that any child's placement at iBrain for that school year is at risk."). The only exception lies where students or their representatives can make the "rare 'showing' that DOE's 'delay or failure to pay' for a *past* school year 'has jeopardized their child's education placement' in the *current* school year." *Juca*, 188 F.4th at 570 (quoting *Mendez*, 65 F.4th at 63).

Here, Plaintiffs insist that they are owed pendency payments for the 2025-2026 school year—an academic year that ended several months ago. (Mem. at 6; *see also id.* at 29-30.) And Plaintiffs do "not come close to alleging" that the students' current educational placements are at risk by virtue of any outstanding payments for the 2025-2026 school year. *Juca*, 188 F.4th at 571. Indeed, neither the complaint nor Plaintiffs' briefs even mention the 2026-2027 school year. (*See generally* Compl.; Mem.; Pls.' Reply.) At most, the complaint speculates that because Defendants allegedly failed to fund Plaintiffs' pendency payments for the 2024-2025 and 2025-2026 school years, Defendants "will continue to do so in the future." (Compl. ¶ 31.) This conjecture does not constitute "the rare showing" of specific "facts" necessary to demonstrate that pendency payments for a prior year endanger the students' educational placement today. *Juca*, 188 F.4th at 570-71 (quotation marks omitted). Plaintiffs' claims for pendency payments for the 2025-2026 school year are therefore moot and must be dismissed. The Court denies Plaintiffs' motion and grants Defendants' cross-motion with respect to those claims accordingly.[2]

However, unlike their claims for pendency payments, Plaintiffs' claims for "late fees"—fees that iBrain incurred through its contracts with third-party transportation and nursing

[2] Because the Court dismisses Plaintiffs' claims for pendency payments on the basis of mootness, the Court need not reach the issue of the operative pendency placements for T.A.N. and C.P. (*See* Mem. at 19-25.)

vendors—present a "live issue" because the Court "could still grant [Plaintiffs] additional relief by ordering DOE to pay those fees." *Juca v. Samuels*, No. 25-2957, 2026 WL 2836538, at *1 (2d Cir. Sep. 22, 2026) (summary order). And the fact that Plaintiffs' pendency payment claims are moot "does not inherently resolve whether [they are] a prevailing party within the meaning of the IDEA, so as to be entitled to reasonable attorney's fees." *M.F. v. N.Y.C. Dep't of Educ.*, No. 23-CV-2017, 2024 WL 729208, at *5 (S.D.N.Y. Feb. 22, 2024); *see also LaRouche v. Kezer*, 20 F.3d 68, 75 (2d Cir. 1994) ("[M]ootness is not determinative as to the propriety of an award of attorney's fees."). Thus, the Court proceeds to the merits of Plaintiffs' claims for contractual late fees and attorney's fees.

**B. Late Fees**

Plaintiffs argue that they are entitled to contractual late fees imposed by the service providers contracted for the students. (*See* Mem. at 25-29.) The Court disagrees and joins the chorus of courts in this District declining to award late fees in the context of adjudicating the DOE's pendency obligations. *See, e.g.*, *Thomas v. Banks*, No. 24-CV-5138, 2026 WL 100753, at *3-4 (S.D.N.Y. Jan. 14, 2026); *Beckford v. Aviles-Ramos*, No. 24-CV-9930, 2025 WL 2781539, at *4 (S.D.N.Y. Sep. 30, 2025); *Davis v. Aviles-Ramos*, No. 25-CV-7555, 2026 WL 44725, at *3-4 (S.D.N.Y. Jan. 7, 2026); *Moonsammy v. Aviles-Ramos*, No. 25-CV-5923, 2026 WL 2225066, at *5 (S.D.N.Y. July 31, 2026).

While the Court wields broad discretion in fashioning equitable relief under the IDEA, *see Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 454 (2d Cir. 2015), Plaintiffs' requested late fees are not warranted in this posture. Conceptually, "requiring Defendants to pay late fees in accordance with a private contract runs contrary to the principle that, under [the] IDEA, [the] DOE is only required to pay pendency tuition retroactively, not prospectively," since Defendants would be forced to choose between "mak[ing] prospective tuition payments" and "incur[ring]

substantial late fees based on a contract to which it is not a party and had no part in negotiating." *Chaperon v. Banks*, No. 24-CV-5135, 2025 WL 2207908, at *9 (S.D.N.Y. Aug. 4, 2025). Allowing Plaintiffs to impose that ultimatum would undermine the Second Circuit's construction of the stay-put provision as allowing only retrospective, as opposed to prospective, pendency payments. *See Mendez*, 65 F.4th at 61 ("The DOE must first withhold payments that have actually accrued before Plaintiffs can seek those payments in court."). Because the Court concludes that an award of late fees would be inappropriate in the context of adjudicating the DOE's pendency obligations to Plaintiffs, the Court denies Plaintiffs' motion and grants Defendants' cross-motion with respect to the third-party contractual late fees.

### C. Attorney's Fees

Finally, Plaintiffs seek attorney's fees, both in relation to the underlying administrative proceedings and this judicial proceeding. (*See* Mem. at 29; Pls.' Reply at 20.)

The IDEA allows "the court, in its discretion" to "award reasonable attorneys' fees" to, *inter alia*, "a prevailing party who is the parent of a child with a disability." 28 U.S.C. § 1415(i)(3)(B)(i). Here, however, Plaintiffs are not prevailing parties because they have not received "actual relief on the merits of [their] claim[s]," *Farrar v. Hobby*, 506 U.S. 103, 111 (1992), so they cannot be awarded fees under the IDEA.

In arguing to the contrary, Plaintiffs first contend that because "Plaintiffs Davis and Mondano prevailed in the administrative proceeding in their claims for pendency placement," they are entitled to fees as prevailing parties. (Mem. at 29; Reply at 20.) Not so. Pendency orders "merely preserve the status quo" and therefore "do not convey prevailing party status upon a plaintiff." *Olshaker v. N.Y.C. Dep't of Educ.*, No. 24-CV-2835, 2025 WL 3089290, at *4 (E.D.N.Y. Nov. 5, 2025). Put differently, the interim relief accorded through those pendency

orders does not "materially alter[] the legal relationship between the parties," *Farrar*, 506 U.S. at 111, since the stay-put provision only "seeks to maintain the educational status quo while the parties' dispute is being resolved," *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014). The lack of an adjudication on the merits in a stay-put order thus precludes an award of fees arising from any pendency victories. *Accord Bd. of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d 464, 469 (7th Cir. 1996) ("The law does not view [the student's] parents as a prevailing party . . . because their only ultimate victory under the IDEA is the invocation of the stay-put provision."); *Tina M. v. St. Tammany Par. Sch. Bd.*, 816 F.3d 57, 61 (5th Cir. 2016) ("Plaintiffs are not the prevailing party by virtue of having invoked the IDEA's stay-put provision.").

Plaintiffs fare no better on the merits of their DPCs. At the administrative level, IHOs have rejected all of Plaintiffs' DPCs that claim that the DOE did not provide them with a FAPE for the 2025-2026 school year. (*See* ECF No. 67-1 at 22; ECF No. 67-4 at 11.) At the judicial level, the Court dismisses Plaintiffs' claims for both pendency payments and late fees. Thus, Plaintiffs have not obtained a victory on the merits of their claims under the IDEA, and they therefore are not prevailing parties or eligible for attorney's fees. The Court grants Defendants' cross-motion and denies Plaintiffs' motion with respect to attorney's fees under the IDEA.[3]

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED, Defendants' cross-motion for summary judgment is GRANTED, and Plaintiffs' letter motion requesting a conference is DENIED as moot.

[3] Because the Court grants Defendants' cross-motion in full and enters judgment in favor of Defendants, the Court denies Plaintiffs' letter motion for a status conference (*see* ECF No. 62) as moot.

The Clerk of Court is directed to close the motions at Docket Numbers 57, 62, and 65, to enter judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated: November 23, 2026
New York, New York

J. PAUL OETKEN
United States District Judge